FILED BY ____ D.C.

05 NOV 16 PM 1: 57

THOMAS M. GOULD
CLERK, US DISTRICT COURT
W.D. OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARY L. DYE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. **03-2229  D V** |
| v. ) | |
| ) | |
| BELLSOUTH TELECOMMUNICATIONS, ) | |
| INCORPORATED, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiff, Mary L. Dye ("Plaintiff"), an African-American female, brought suit against BellSouth Telecommunications, Incorporated ("Defendant" or "BellSouth"), alleging racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. The Court conducted a bench trial on May 31, 2005, and June 1, 2005, on the merits of the case. After consideration of the testimony of the witnesses, the exhibits, and the briefs of the parties, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1. Plaintiff, an African-American female, has been employed by Defendant since March 1, 1977. Tr. 21. She is a telephone operator in Defendant's Hammond, Louisiana office. Plaintiff worked as a telephone operator in Defendant's Memphis, Tennessee Operator Services Department from 1991 through 1998. Id. at 22, 34.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 11/17/05

2. In 1998, Defendant had the roof repaired and Plaintiff became ill from inhaling the fumes from the tar. Id. at 26.

3. Following her illness, which was covered by workers compensation, Plaintiff was hospitalized for depression for twelve (12) days. Id. at 26, 34.

4. Defendant sent Plaintiff to Dr. Moskovitz, a psychiatrist, to be evaluated. Id. at 61. Following that evaluation, Plaintiff received a letter from Defendant, dated December 21, 1998, instructing her to return to work. Id. at 60.

5. Plaintiff returned to work, but went home sick two hours later due to the flu. Id. at 62.

6. In January of 1999, Plaintiff applied for short term disability leave, pursuant to Defendant's Short Term Disability ("STD") Benefits Plan. Id. at 144. Plaintiff asserted that she was temporarily disabled due to **depression.** Id.

4. Defendant contracted with a third party plan administrator, Kemper National Services ("Kemper"), which administered its STD Plan. Id. at 180, 291.

5. Defendant, through Kemper, granted Plaintiff's disability claim. Pursuant to Defendant's STD policy, the maximum amount of leave available to an employee was 52 weeks. Plaintiff remained on STD from January of 1999 until December of 1999. Id. at 147.

6. On August 10, 1999, Kemper sent Plaintiff a letter informing her that her 52 weeks of STD leave would expire on December 17, 1999. Plaintiff did not contact Defendant concerning her return to work. Id. at 127.

7. Plaintiff's psychologist, Dr. Mace Coday, sent Kemper evaluations of Plaintiff's condition during the period of her disability. As early as May, 1999, Dr. Coday indicated that although Plaintiff continued to suffer from depression, Plaintiff could return to work part-time with a gradual

2

increase to full-time status. Despite Dr. Coday's evaluations, Plaintiff remained on STD without returning to work before December 17, 1999, the date her STD benefits expired. Id. at 75.

8. Plaintiff indicated that she was able to return to work as early as late summer of 1999. However, Plaintiff did not return to work.    Id. at 85.

9. Dr. Coday sent Kemper a letter on December 3, 1999, releasing Plaintiff to work part-time beginning December 6, 1999 with limited duties. The letter stated that Plaintiff could work four hours a day, five days a week in a noise-free environment with minimal contact with people. Id. at 89.

10. Plaintiff spoke with her case manager at Kemper, who told her that the restrictions were refused and she must return to work without restrictions. Id. at 91.

11. Karen Bunch, Defendant's medical restriction processing representative, stated that the restrictions requested by Dr. Coday for Plaintiff could be accommodated by BellSouth. Id. at 238-39.

12. Plaintiff told Dr. Coday that she wanted to be released from the restrictions because she wanted to return to work. Id. Dr. Coday then wrote another letter to Kemper, dated December 27, 1999, modifying the restrictions so that Plaintiff was allowed to return to work for seven and a half hours a day in a quiet area. Id. at 93.

13. Defendant sent Plaintiff a notice of termination for failure to return to work after December 17, 1999. Id. at 239. Plaintiff received notice the of her termination in January, 2000. Id. at 97. The notice stated that Plaintiff quit her position at BellSouth. Id. at 97. Plaintiff was initially unable to receive unemployment benefits because she resigned her position instead of being terminated. Id. at 99. However, she appealed and after presenting evidence that she was initially out

3

of work because of her illness from the roof repairs, for which she received worker's compensation, she began to receive unemployment. Id.

14. Removing employees from payroll because they fail to return to work from an authorized leave is standard procedure at BellSouth. Id. at 312.

15. After Plaintiff was terminated, she filed a grievance with her labor union, Communications Workers of America ("CWA"), challenging her termination. Id. at 101. Plaintiff worked as a census worker and also cleaned houses and office buildings. Id. at 99-100.

16. Plaintiff and Defendant settled the dispute, and Defendant agreed to reinstate Plaintiff as an operator in Memphis effective in December, 2000. Id. at 101.

17. Plaintiff returned to work at BellSouth in December of 2000 on a full-time basis with no medical restrictions. Id. at 102.

18. Prior to being out on STD, Plaintiff was formally counseled on two occasions for her work attendance. Shirley Wright, Plaintiff's African-American supervisor, issued the two written warnings. Id. at 125. Plaintiff asserts that she was in the hospital at the time and that Defendant's policy is to counsel employees or include it in the employee's record, but that she did not have any history of unsatisfactory attendance. Id. at 115. Plaintiff's termination was unrelated to the previous warnings concerning attendance. Id. at 239.

19. Following Plaintiff's return to work, Defendant downsized its Memphis office and thirty-seven operators were sent to other offices. Plaintiff was sent to the Nashville office. Id. at 108.

20. Six months later, the operators in the Nashville office were given the choice to go to Hammond, Louisiana, to Lake Charles, Louisiana, or to leave their jobs and go into a job pool. Id. at 109. Plaintiff chose to go to Hammond, Louisiana, but repeatedly requested to return to the

4

Memphis office. Plaintiff's supervisor, Deborah Johnson, told her that only people with more seniority than Plaintiff would be allowed to return to Memphis. Id. at 110.

21. Tammy Creary, a white operator who had less seniority than Plaintiff, chose to give up her job. Four or five positions became available for operators and Tammy Creary was given one of those positions. Id.

22. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 4, 2000. Id. at 112.

17. On April 11, 2003, Plaintiff filed a complaint against Defendant in the United States District Court for the Western District of Tennessee for race discrimination based upon her termination.

## III. CONCLUSIONS OF LAW

To prevail on a claim of disparate treatment discrimination, a plaintiff must show discriminatory animus. Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995). Discriminatory animus may be established by direct evidence or may be inferred from a *prima facie* showing of discrimination. Id.

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment decision at issue. Price Waterhouse v. Hopkins, 490 U.S. 228, 247, 104 L. Ed. 2d 268, 109 S.Ct. 1775 (1989); Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted). Evidence is direct when, if believed, it would prove the existence of a fact without any inferences or presumptions. Lautner v. AT&T, 1997 U. S. App. Lexis 1267, at *8 (6th Cir. 1997); Norbuta v. Loctite Corp., 1 Fed.Appx. 305, 313 (6th Cir. 2001) ("Whatever the strength of [the]

5

evidence, it is not 'direct' evidence [when it] admits to more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact."). If the plaintiff provides credible direct evidence of discriminatory animus, the burden of persuasion shifts to the defendant to establish by a preponderance of the evidence "that it would have [taken the adverse action even] had it not been motivated by discrimination." Jacklyn, 176 F.3d at 926. Thus, the employer must do more than merely "articulate" its nondiscriminatory reason for its action. Blalock v. Metals Trade, Inc., 775 F.2d 703, 710 (6th Cir. 1985).

Here, the Plaintiff has proffered no direct evidence of discriminatory animus. Plaintiff does not assert that Defendant discriminated against her or anyone prior to her STD status. Moreover, Plaintiff has not alleged that anyone at any time heard any of Defendant's representatives make any discriminatory comments or any statements regarding actions taken for discriminatory reasons. Therefore, Plaintiff must establish a *prima facie* claim of discrimination.

When an employee seeks to establish a *prima facie* showing of discrimination, the evidentiary framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); McDonald v. Union Camp Corp., 898 F.2d 1155, 1159 (6th Cir. 1990). Under the McDonnell Douglas burden-shifting framework, the plaintiff must first prove a *prima facie* case of discrimination by a preponderance of the evidence. Wilson v. Stroh Co., Inc., 952 F.2d 942, 945 (6th Cir. 1992). If the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Burdine, 450 U.S. at 253. Once the employer provides a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff may still prevail if evidence has been proffered that tends to

6

disprove the reasons offered by the defendant. Kline v. Tennessee Valley Auth., 128 F.3d 337, 347 (6th Cir. 1997). However, even if the plaintiff proves that the employer's proffered reason is pretext, she nonetheless bears the ultimate burden of proving that a discriminatory intent motivated the defendant's actions. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

A plaintiff may establish a *prima facie* case of discrimination by showing by a preponderance of the evidence that she 1) is a member of a protected group, 2) was subject to an adverse employment action, 3) was qualified for the position, and 4) was replaced by an individual outside of the protected class or was treated less favorably than a similarly-situated employee outside of the protected class. Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002) (citations omitted).

Plaintiff alleges that Defendant discriminated against her because of her race. As an African American, Plaintiff is a member of a protected class. Thus the first element is satisfied.

The Sixth Circuit has held that not every act by an employer, which the employee finds critical or unpleasant, will rise to the level of an "adverse employment action." See Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999). An unduly broad definition of adverse employment action would hinder supervisory criticism and lead to paranoia in the workplace. See id. The Supreme Court described an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), quoted in Jones v. Wright State Univ., No. 98-4041, 1999 WL 801576, at *1 (6th Cir. Sept. 28, 1999) (unpublished table disposition). Plaintiff contends that she was denied accommodations and was terminated as a result. Thus, Plaintiff has satisfied the requirement that she be subject to an adverse employment action.

7

A plaintiff demonstrates that she is qualified by showing that she was performing at a level which met the defendant's legitimate expectations. Jacklyn v. Schering-Plough Healthcare Prods., 176 F.3d 921, 929 (6th Cir. 1999). In the instant case, Defendant has not alleged that Plaintiff was not qualified for the position. Plaintiff was employed by Defendant for more than twenty years before the events that led to this action took place. Moreover, Plaintiff has since returned to work for Defendant in the same position that she previously held. Therefore, Plaintiff has satisfied the first three elements of a *prima facie* claim of discrimination.

The final step in the *prima facie* analysis requires the Court to determine whether or not Plaintiff was replaced by an individual outside of the protected class. The fourth element may also be satisfied by showing that similarly-situated, non-protected employees were treated more favorably. See Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995). In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of her employment situation were "nearly identical" to those of the non-minority employee she alleges was treated more favorably. Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). Plaintiff argues that Tammy Creary was a similarly-situated white employee who was given preferential treatment when she was allowed to return to Memphis and Plaintiff was not. However, Creary was not similarly situated because she chose to go off of the payroll and take her chances on a position becoming open in Memphis. Plaintiff chose to follow her job to Hammond, Louisiana. Therefore, at the time the position became open in Memphis, Creary had chosen to leave the payroll in the hopes of going to Memphis and Plaintiff had opted to abandon the hope of going to Memphis and follow her job to Hammond. Had Plaintiff chosen not to go to Hammond, she

8

would have been considered a surplus employee and would have been given the option of returning to the Memphis office.

Plaintiff also argues that Nancy White, ("White"), a white operator, was a similarly-situated employee who was allowed to work with accommodations similar to those requested for Plaintiff by Dr. Coday. White held the same position as Plaintiff and had less seniority. She was on leave due to depression, just as Plaintiff was. Defendant argues that White was declared permanently disabled by Kemper and Plaintiff was not. However, Dr. Coday sent a mental health assessment progress report to Kemper on November 10, 1999, which specifically stated that Plaintiff had permanent medical restrictions. Kemper never forwarded that information to Defendant and made the decision to ignore Plaintiff's doctor's assessment in determining that Plaintiff was not permanently disabled. Kemper further ignored Defendant's ability to accommodate the requested restrictions when it denied the request without consulting with Defendant. Defendant argues that it was not informed that Dr. Coday had stated that Plaintiff had permanent medical restrictions or that she had requested accommodations for Plaintiff. Defendant argues that it was Kemper's decision to grant or deny restrictions. However, because Kemper had the apparent authority to act on the behalf of Defendant, Defendant cannot shield itself from liability by placing Kemper, its agent, between BellSouth and its employees. See Hall v. ESIS, Inc., 2005 WL 2033500, *1 (E.D. Mich. 2005) (Third-party administrator acts as the agent for the employer for purposes of administering the plan); Anderson v. International Union, United Plant Guard Workers of America, 370 F.3d 542, 551 (6th Cir. 2004) ("An agent acting with apparent authority may bind his or her principal. . . .") The Sixth Circuit has held that "apparent authority arises in situations when the principal manifests to a third party that an agent is authorized to act upon the principal's behalf and

9

the third party reasonably relies upon that authority." Anderson, 370 F.3d at 551. Because BellSouth manifested to Plaintiff that Kemper was authorized to act upon its behalf and Plaintiff relied on that authority, apparent authority existed in this case. Thus, Defendant must accept responsibility for Kemper's actions that are within the scope of its role as administrator of BellSouth's STD policy. When Kemper had knowledge that Dr. Coday diagnosed Plaintiff as having a permanent medical condition and requested accommodations for restrictions in Plaintiff's employment, that knowledge is imputed to Defendant. "Under common law, a principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of his employment and is related to the matters within his authority." Aetna Cas. and Sur. Co. v. Leahey Const. Co., 219 F.3d 519, 541 (6th Cir. 2000). Thus, Nancy White and Plaintiff were sufficiently similar and White was treated more favorably than Plaintiff when she was allowed to work with restrictions and Plaintiff was not. Therefore, Plaintiff has satisfied the fourth element of the *prima facie* analysis as to her claim of race discrimination.

The Court finds that Plaintiff has thus met the burden of establishing a *prima facie* case of race discrimination. Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See Kline v. Tennessee Valley Auth., 128 F.3d 337, 342 (6th Cir. 1997) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct 1089, 1093, 67 L.Ed.2d 207 (1981)). "A reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable." See Galbraith v. Northern Telecom, Inc., 944 F.2d 275, 282 (6th Cir. 1991) (overruled on other grounds by Kline v. Tennessee Valley Auth., 128 F.3d 337 (6th

Cir. 1997)).

In the instant case, Defendant argues that Plaintiff was terminated because she failed to return to work upon the exhaustion of her STD benefits. Defendant has demonstrated that it is BellSouth's ongoing policy to terminate any employee who fails to return to work or apply for long term disability benefits when her short term disability runs out. This assertion satisfies Defendant's burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff. Consequently, the burden shifts again to Plaintiff to demonstrate that Defendant's proffered reason was mere pretext. A plaintiff may establish pretext by showing that the proffered reason 1) has no basis in fact, 2) did not actually motivate the adverse employment action, or 3) was insufficient to motivate the adverse employment action. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). The plaintiff is not required to produce direct evidence of discrimination to rebut the employer's proffer of a legitimate, nondiscriminatory reason. See Kline, 128 F.3d at 352. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135 (2000). The trier of fact may ultimately look at the totality of the evidence to determine whether the defendant's decision was motivated by intentional discrimination. See Terry v. Gallegos, 926 F.Supp. 679, 693 (W.D. Tenn. 1996).

In the instant case, Plaintiff has not denied that she was terminated because of her failure to return to work once her STD was exhausted. However, Plaintiff was thwarted in her effort to return to work by Kemper, who discriminated against her by denying her restrictions, refusing to grant her status as permanently disabled, and failing to provide information to Defendant that would enable

11

Defendant to accommodate Plaintiff's needs. By so doing, Kemper, in its capacity as Defendant's agent, prevented Plaintiff from returning to work before her STD expired and ultimately, caused her termination.

## IV. Conclusion

Based on the foregoing, the Court concludes as a matter of law that Plaintiff has proven a *prima facie* case of racial discrimination and has met her burden of demonstrating that discrimination by Defendant caused her termination. The Plaintiff is ordered to submit briefs on damages within 30 days from the date of this order. Defendant will submit a response brief 20 days after service of Plaintiff's brief.

Accordingly, judgment is entered for Plaintiff.

**IT IS SO ORDERED** this ___15th___ day of November, 2005.

BERNICE BOUIE DONALD
United States District Judge

12

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 60 in case 2:03-CV-02229 was distributed by fax, mail, or direct printing on November 17, 2005 to the parties listed.

---

Mary L. Dye
210 W. Robert St.
Apt. #8
Hammond, LA 70401--320

Sheldon W. Snipe
BELLSOUTH TELECOMMUNICATIONS, INC.
1155 Peachtree St., N.E.
Ste. 1800
Atlanta, GA 30309

Charles W. Hill
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Wanda Abioto
LAW OFFICE OF WANDA ABIOTO
1555 Madison Ave.
Memphis, TN 38104

Honorable Bernice Donald
US DISTRICT COURT