IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| MARY L. DYE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )   No. 03-2229 DV |
|  | ) |
| BELLSOUTH TELECOMMUNICATIONS, | ) |
| INC., | ) |
|  | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION ON
THE ISSUE OF DAMAGES

Plaintiff Mary L. Dye ("Dye"), a telephone operator for defendant BellSouth Telecommunications, Inc. ("BellSouth"), filed this lawsuit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000h-6. Dye alleged that BellSouth discriminated against her on the basis of race when BellSouth (1) denied Dye certain accommodations that BellSouth had granted to a similarly situated white employee and (2) terminated Dye's employment.

A bench trial was held on May 31, 2005, and June 1, 2005, before U.S. District Judge Bernice B. Donald. Following the two-day bench trial, Judge Donald concluded that Dye had (1) made a *prima facie* case of race discrimination and (2) had met her burden of demonstrating that BellSouth's discrimination caused her

termination.   Mem. Op., *Dye v. BellSouth Telecomm., Inc.*, Civil Case No. 03-2229-DV, at 12 (W.D. Tenn. Nov. 16, 2005).   The court ordered the parties to submit briefs on damages and attorney fees. *Id*.   The issue of awarding damages and attorney fees was referred to the U.S. Magistrate Judge for a report and recommendation. Before this court for consideration are the Plaintiff's Brief in Support of Damages; the Affidavit of Wanda Abioto, Dye's attorney, regarding attorney fees; Defendant's Response to Plaintiff's Brief on Damages; and Defendant's Response to Plaintiff's Attorney's Fees Application.

## PROPOSED FINDINGS OF FACT[1]

BellSouth employed Dye, an African-American female, beginning March 1, 1977. (Trial Tr. 21.)   Dye became ill in 1998 from tar inhalation as a result of roof repairs performed by BellSouth. (Trial Tr. 26.)   Following that illness, Dye was hospitalized for depression for twelve days.   (Trial Tr. 34.)   Based on the diagnosis of depression, Dye applied for short-term disability leave through BellSouth's Short Term Disability Benefits Plan ("STD Plan").   (Trial Tr. 144.)   BellSouth, through its agent, Kemper National   Services   ("Kemper"),   granted   Dye's   STD   benefits

---

[1]   Judge Donald summarized the facts established at trial in her Memorandum Opinion.   Only those facts which bear on the issue of awarding damages and attorney fees will be repeated herein.

application.   (Trial  Tr.  147.)   Dye  remained  on  short-term disability for the full amount of time allowed by BellSouth's STD Plan, fifty-two weeks, from January 1999 until her benefits expired on December 17, 1999.  (Trial Tr. 147.)

BellSouth terminated Dye and dropped her from its payroll on December 18, 1999, for failure to return to work after she was absent during her short-term disability leave. (Trial Tr. 129—30.) At the time of her termination in December 1999, Dye's pay rate with BellSouth was $31,096 per year, which breaks down to $598 per week or $15.95 per hour.[2]  (Bunch Decl.)  After her termination, Dye filed a grievance with the National Labor Relations Board to challenge the termination.  (Trial Tr. 101.)  Dye prevailed on the grievance, and as a result, BellSouth returned Dye to the payroll on December 3, 2000.  (Trial Tr. 101.)

Upon her December 18, 1999 termination, Dye sold her vehicle and began relying on food stamps to purchase food. (Trial Tr. 118.) Having to take these actions produced feelings of degradation and betrayal in Dye.  (Trial Tr. 118.)

Between the time of her termination and her reinstatement, Dye worked for the Census Bureau, sold products through Home Interiors, and cleaned houses.  (Trial Tr. 99—100, 113—14.)  At the Census

---

[2]    She normally worked 37.5 hours per week.

3

Bureau, Dye worked forty-hour weeks for five months, earning $11.00 per hour, for a total of $8,800. (Pl.'s Br. 9.) Dye also made $1,200 cleaning houses and $400 working for Home Interiors. (Pl.'s Br. 9.)

Dye filed with the EEOC charges of racial discrimination against BellSouth in April 2003. After receiving a notice of right to sue from the EEOC, Dye filed a *pro se* complaint for racial discrimination against BellSouth on April 11, 2003. On July 27, 2004, Wanda Abioto entered an appearance as counsel for Dye. In addition to representing Dye during the two-day, non-jury trial, Abioto successfully sought an extension of the discovery deadline, sought to amend the complaint which was granted in part and denied in part, and responded to BellSouth's summary judgment motion. According to Abioto's affidavit filed with the court, she spent 210.4 hours on the case at an hourly rate of $350.00 per hour, for a total of $73,640 in attorney fees, plus she incurred $876.99 in expenses. (Abioto Aff.) Abioto has practiced law since 1984. (Abioto Aff.)

<u>PROPOSED CONCLUSIONS OF LAW</u>

A.   <u>Back Pay</u>

Dye claims that she is entitled to back pay and the liquidated value of benefits for the period during which she was wrongfully terminated, specifically December 17, 1999 through December 3,

2000.  (Pl.'s Br. 10—11.)  The award of back pay is an equitable remedy authorized by 42 U.S.C. § 2000e-5(g)(1)[3] and is "presumptively favored in employment discrimination cases." *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1233 (6th Cir. 1996) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 405 (1975)).  The back pay award "should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination."  *Suggs*, 72 F.3d at 1233 (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988)).

1.  Salary

At trial, BellSouth agreed to stipulate to Dye's rate of pay during the relevant period. (Trial Tr. 117.) BellSouth stipulated that, as of December 1999, Dye's rate of pay was $598 per week.

---

[3]     The statute states:

>      If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1).

(Bunch Decl.)   Due to Dye's wrongful termination, she was off BellSouth's payroll for approximately 50 weeks, from December 18, 1999 through December 3, 2000.   Thus, this court finds that the amount of salary Dye would have received but for the discrimination would have been $29,900.

2.   Liquidated Benefits

As to the liquidated value of the benefits to which Dye would have been entitled during the period of termination, it was established at trial that Dye had used up all fifty-two weeks of the short-term disability benefits to which she was entitled as a BellSouth employee.   As Dye actually received this benefit, it cannot be included in the award of back pay.   Dye has not demonstrated to the court that she would have received any other specific benefits but for the discrimination.   Thus, this court finds that Dye is not entitled to any additional amount of back pay for lost benefits.

3.   Reduction of Back Pay

In addition to authorizing an award of back pay, 42 U.S.C. § 2000e-5(g) states that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against *shall* operate to reduce the back pay otherwise allowable."   42 U.S.C. § 2000e-5(g)(1) (emphasis added).   This statutory language dictates that, if the court determines that interim earnings were

6

earned or, with reasonable diligence, could have been earned, then such earnings must reduce the back pay award.

It was established at trial that Dye earned income from several sources during the period between her termination and her reinstatement. Particularly, it was established that Dye earned $8,800 working for the Census Bureau, $1,200 cleaning houses and office buildings, and $400 selling products for Home Interiors. Thus, Dye earned a total of $10,400 during the interim period. In light of Dye's interim earnings, this court finds that the back pay award should be reduced by $10,400, and submits that Dye should be awarded a total of $19,500 in back pay.

B.   Compensatory Damages

Dye argues that she is entitled to compensatory damages. (Pl.'s Br. 12—13.) Pursuant to 42 U.S.C. § 1981a(a)(1), a plaintiff can recover compensatory and punitive damages[4] in a successful action under 42 U.S.C. §§ 2000e-5 or 2000e-16 against an employer "who engaged in unlawful intentional discrimination." 42 U.S.C. § 1981a(a)(1); see also Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1215 (6th Cir. 1996). Section 1981a enumerates the types of compensatory damages that a court may award, including "future pecuniary losses, emotional pain, suffering, inconvenience,

---

[4]   This is in addition to the relief authorized by Title VII in 42 U.S.C. § 2000e-5(g).   42 U.S.C. § 1981a(a)(1).

mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). Before recovering compensatory damages for emotional distress, a plaintiff must show that the defendant's unlawful actions caused her emotional distress. *Turic*, 85 F.3d at 1215 (citing *Carey v. Piphus*, 435 U.S. 247, 263—64 (1978)). To show causation in this regard, "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden." *Turic*, 85 F.3d at 1215 (citing *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994)).

In her testimony at trial, Dye stated that her termination was a "degrading" experience, and, that as a result, her "dignity was stripped." (Trial Tr. 118.) She stated that she was forced to sell her vehicle and began using food stamps. (Trial Tr. 118.) It is submitted, however, that there is no evidence in the trial record that Dye suffered from depression or any other emotional problems after BellSouth terminated her employment in December 1999. Dye stated that both before and after her termination, she felt mentally and physically capable of returning to work. (Trial Tr. 126—27, 165—71.) Dye's testimony about crying spells, periods of depression, and aggravation of migraines, as well as anxiety attacks referenced in her brief in support of damages, all relate to the period of time she was on short-term disability. (Pl.'s Br.

2—5; Trial Tr. 30—34.)  After her termination, she was not treated by a professional for depression, hospitalized for depression, nor prescribed any anti-depressant medications.  (Trial Tr. 165—70.)

Based on Dye's testimony and the particular circumstances of this case, this court finds Dye suffered minimal emotional distress and submits that an award of compensatory damages in the amount of $1,000 would adequately compensate Dye for her emotional distress.

C.   Punitive Damages

Dye also seeks a punitive damages award.  (Pl.'s Br. 14—19.) To support an award of punitive damages in a Title VII case, the plaintiff must establish that the defendant engaged in a discriminatory practice with malice or reckless indifference to the plaintiff's rights.  42 U.S.C. § 1981a(b)(1).  To meet this requirement, a plaintiff must show "more than merely intentional discrimination."  *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 808 (6th Cir. 2004) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536—37 (1999)).  Dye presented no evidence that any specific BellSouth manager or employee committed any acts of racial discrimination against her.  Indeed, Dye testified at trial that "it was Kemper that kept her from going back to work." (Trial Tr. 82.)  In addition, it was not clear that the Kemper claims administrator even knew Dye's race.  (Trial Tr. 352, 363.)  This court therefore finds that Dye has not established that BellSouth

acted with malice or reckless indifference to her federally protected rights. Accordingly, it is submitted that Dye is not entitled to an award of punitive damages.

D.  **Attorney Fees**

In her brief supporting damages, Dye seeks attorney fees and costs. (Pl.'s Br. 19—20.) Title VII allows a court the discretion to award reasonable attorney fees to the prevailing party. 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs . . . ."). The party seeking the attorney fees award bears the burden of documenting the entitlement to such an award. *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999).

1.  Calculation of Lodestar Amount

A fee awarded under this statute first and foremost must be reasonable. *Blum v. Stenson*, 465 U.S. 886, 893 (1984). In deciding what is a reasonable fee, the starting point is the determination of the "lodestar" amount, which is the number of reasonable hours expended multiplied by a reasonable hourly rate for legal services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[5] The party seeking the award should offer evidence to

_____

[5]     The Supreme Court laid out the general standards to follow in making awards of attorney fees under statutes authorizing such awards to a "prevailing party." *Hensley*, 461 U.S. at 433 n.7. Thus, precedent involving attorney fees for such awards are

support the hours and rates claimed.  *Id.*

Prior to *Hensley*, the Fifth Circuit set forth twelve factors to use in analyzing the reasonableness of an award: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of alternative employment opportunities; (5) customary rates; (6) whether the fee was fixed or contingent; (7) time constraints imposed by client and circumstances; (8) amount of relief requested and amount granted; (9) counsel's experience or reputation; (10) undesirability of the case; (11) nature and length of professional relationship; and (12) awards in similar cases. *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717—19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Neither *Hensley* nor *Blanchard*, however, supplanted these factors; rather, these factors are implicitly assessed when considering the reasonableness of the expended hours and the hourly rate.  *See Hensley*, 461 U.S. at 434 ("[O]ther considerations . . . may lead the district court to adjust the fee upward or downward . . . ."); *see also Blanchard*, 489 U.S. at 93 ("*Johnson's* 'list of 12' thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees . . .

---

followed regardless if the precedent involves Title VII or other federal statutes. *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).

11

.").

    a.   Reasonable Hourly Rate

Under the lodestar method, a starting point for calculating fees is the determination of a reasonable hourly rate. Dye seeks fees based on an hourly rate of $350.00. (Abioto Aff.) BellSouth objects to Dye's requested hourly rate of $350.00 as being excessive. (Def.'s Resp. Pl.'s Att'y Fee App. 2—3.)

The Supreme Court has recognized the community market rule as the proper method to ascertain a reasonable hourly rate. *Blum,* 465 U.S. at 895 n.11. This rule is the easiest way to cope with the "'inherently problematic' task of ascertaining a reasonable fee in a situation where 'wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable.'" *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). In applying the community market rule, the court looks to rates for similar services in the community by attorneys with reasonably comparable skills, experience, and reputation. *See id.* The fee applicant bears the burden to produce evidence, "*in addition to the attorney's own affidavits*," that the requested rates are in line with the prevailing community rates. *Blum*, 465 U.S. at 895 n.11 (emphasis added). Evidence may include affidavits of other attorneys, case precedents, and fee studies. *Ottis v. Shalala*, No.

92-CV-426, 1994 U.S. Dist. LEXIS 16325, at *19 (S.D. Mich. Oct. 20, 1994) (unpublished table decision).

While it is the plaintiff's burden to prove his entitlement to an attorney fees award, *Johnson*, 488 F.2d at 720, Dye has produced no justification, such as affidavits of other attorneys, fee studies, or case precedent, other than her attorney's affidavit for an hourly rate of $350.00.  This court has not found any case law to support an hourly rate of $350.00 for a Memphis employment attorney.  In *Isabel v. City of Memphis*, a Title VII employment discrimination case, the United States Court of Appeals for the Sixth Circuit upheld the reasonableness of an hourly rate of $250.00 for plaintiff's counsel, a Memphis-based employment attorney.  *Isabel v. City of Memphis*, 404 F.3d 404, 415—16 (6th Cir. 2005).  In *Vaughan v. Memphis Health Center, Inc.*, an ADEA employment discrimination case, the United States District Court for the Western District of Tennessee found that an hourly rate of $200.00 to $225.00 was reasonable.  *Vaughan v. Memphis Health Ctr., Inc.*, No. 03-2470-MaV, 2006 U.S. Dist. LEXIS 12984, at *2—3 (W.D. Tenn. Mar. 8, 2006).  The present case does not involve highly novel or complex issues such as would justify an hourly rate that is $100 to $150 above the prevailing market rate.  Nor does Dye's counsel assert any exceptional reputation or experience to justify the requested rate, or that the case was particularly undesirable.

Accordingly, this court finds that $200 per hour is a reasonable hourly rate to be used in the calculation of the award of attorney fees in this case.

b.   The Number of Hours Reasonably Expended

Once the court has determined the appropriate hourly rate, the court must then determine what number of hours is reasonable.  The party seeking an award of attorney fees has the burden of demonstrating the reasonableness of hours and the opposing party has the burden of producing evidence against this reasonableness. *See Blum*, 465 U.S. at 897; *Hensley*, 461 U.S. at 437.  If the fee applicant presents an inadequate documentation of hours, "the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  Because Title VII requires a "reasonable" amount, 42 U.S.C. § 2000e-5(k), the time entries must be detailed enough to allow the court to evaluate their reasonableness. *See Hensley*, 461 U.S. at 437 & n.12; *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004); *see, e.g., Brack v. Shoney's, Inc.*, No. 01-2997-DV, 2004 WL 2806495, at *4 (W.D. Tenn. Jul. 29, 2004).  Further, the court should exclude from its calculation hours that are "excessive, redundant, or otherwise unnecessary."  *See Hensley*, 461 U.S. at 434; *Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 636 (6th Cir. 1979); *see also, e.g., Singer v. Mahoning Bd. of Mental Retardation*, 519 F.2d 748 (6th Cir. 1975) (finding a total

14

of forty hours charged by five attorneys not reasonably necessary).

BellSouth claims that some of the time entries of Dye's attorney are not sufficiently detailed.[6] (Def.'s Resp. Pl.'s Att'y Fee App. 6–7.) Abioto's broad time entries for "Review of Documents," "Research," and "Preparation" reflect 41.26 hours spent reviewing documents in this case. The time entries, however, are not sufficiently detailed to allow the court to determine the reasonableness of the time allegedly spent on those particular tasks. The court is unable to discern which "documents" were reviewed or the purpose of the "research." Therefore, this court recommends that the amount of time spent on these tasks be reduced by one-half, thus reducing the total number of hours claimed by Dye by 20.63 hours.

BellSouth also claims that some of the charges are duplicative and indicative of an unreasonably long amount of time

---

[6]     BellSouth specifically points to the following entries as lacking sufficient detail:

| Activity | Hours | Date |
|----------|-------|------|
| Review of Documents/Pleadings | 6.5 | 5/10/04 |
| Review of Documents | 4.5 | 5/12/04 |
| Review Records/Discovery | 8.5 | 5/24/04 |
| Reviewing Records | 3.36 | 6/08/04 |
| Review Document | 1.45 | 9/24/04 |
| Review Document/Research | 5.5 | 9/26/04 |
| Research Material Facts S.J. | 2 | 2/23/05 |
| Research Material Facts S.J. | 3.45 | 2/25/05 |
| Researching/Docu. Review | 4 | 3/14/05 |
| Preparation | 2 | 4/08/05 |

spent on certain tasks.  (Def.'s Resp. Pl.'s Att'y Fee App. 7—8.)

Specifically, BellSouth objects to the 21.65 hours Abioto claims to

have spent preparing one set of interrogatories and one set of

document requests.[7]  (Def.'s Resp. Pl.'s Att'y Fee App. 7.)  As the

interrogatories and document requests at issue were not filed with

the court, this court is unable to examine them to determine

whether 21.65 hours spent preparing them is reasonable.  Given the

general nature of such documents and the nature of the case,

however, this court finds that 21.65 hours is unreasonable.

Therefore, this court recommends that the amount of time spent on

these tasks be reduced by one-half, thus reducing the total number

of hours claimed by Dye by an additional 10.83 hours.

BellSouth further contends that Dye should not recover for the

6.5 hours spent on a pleading that she never filed.  (Def.'s Resp.

Pl.'s Att'y Fee App. 9.)  Dye included in her request for attorney

fees the time Abioto spent preparing a proposed pretrial order on

May 8, 2005 and May 10, 2005.  This court, however, does not have

---

[7]    BellSouth specifically points to the following entries as
being duplicative:

| Activity | Hours | Date |
|----------|-------|------|
| Drafting Discovery | 6.2 | 5/26/04 |
| Drafting Discovery | 6 | 5/31/04 |
| Drafting Completed Interr. | 4.5 | 6/15/04 |
| Drafting Completed Request | 3.45 | 6/16/04 |
| Completed Discovery Requests | 1.5 | 7/20/04 |

record of Dye ever having filed a proposed pre-trial order.[8]
Opposing counsel also claims never to have seen this document.
Accordingly, this court finds that Dye may not recover the fees
associated with the 6.5 hours alleged to have been spent on that
task.  Accordingly, it is recommended that the total number of
hours claimed by Dye should be reduced by an additional 6.5 hours.

This court therefore submits its calculation of the lodestar
amount to be $34,488, based on 172.44 hours at $200 per hour.[9]

2.   Adjustment of Lodestar Amount

After determining the lodestar amount, the court in its
discretion may adjust the award upward or downward to assess a
reasonable award.  *Hensley*, 461 U.S. at 434.  The most important
factor is the "results obtained."  *Id.*; *see also Johnson*, 433 F.2d
at 718.  It is proper for a court to reduce fees in cases of
limited success.  *Shore v. Fed. Ex. Corp.*, 42 F.3d 373, 381 (6th
Cir. 1994) (citing *Wooldridge v. Marlene Indust. Corp.*, 898 F.2d.
1169, 1173—77 (6th Cir. 1990) (reducing fees because of 50% success
rate and poor performance by plaintiff's attorney)); *see also*

---

[8]    It is possible that the proposed pretrial order was
submitted directly to Judge Donald's chambers.

[9]    The affidavit of Dye's attorney set forth 210.4 hours as
the total amount of time spent on this case.  That amount was
reduced by 20.63 hours due to this court's inability to determine
the reasonableness of several vague time entries, by 10.83 hours
for excessive time spent preparing discovery requests, and by 6.5
hours for time spent preparing the proposed pretrial order.

*Farrar v. Hobby*, 506 U.S. 103, 115 (1984); *Hensley,* 461 U.S. at 433; *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 910 (6th Cir. 1991).   To determine whether this downward adjustment is necessary, it is crucial to examine the relationship between the extent of overall success and the amount of the award requested. *Hensley*, 461 U.S. at 434.

The Supreme Court in *Hensley* established two questions that a court must address when contemplating a downward adjustment based on limited success. *Id.* "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?" *Id.* "Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  *Id.*  If the claims are distinctly different and unrelated (i.e. claims based on different facts or legal theories), they are treated as separate lawsuits and the plaintiff cannot be reimbursed for fees incurred in pursuing the unsuccessful claims. *Id.* at 434—35.  If the claims arise from a common core of facts or are based on related legal theories, however, there is not an immediate reduction.  *Id.* at 435; *Lilley v. BTM Corp.*, 958 F.2d 746, 756 (6th Cir. 1992) (allowing no reduction of attorney's fees by the district court on account of unsuccessful claims because the retaliatory discharge claim and age discrimination claim were

18

related); *Williams v. Roberts*, 904 F.2d 634, 640 (11th Cir. 1990) (upholding the district court's refusal to reduce lodestar amount although employee did not prevail on a claim of involuntary transfer because of the intertwined nature of the two claims).

In the present case, BellSouth argues that Dye cannot recover fees for time spent on a failed motion to amend her complaint. (Def.'s Resp. Pl.'s Att'y Fee App. 8.)   The motion to which BellSouth refers, however, was not denied in the entirety.  Dye was allowed to amend her complaint to allege continuing discrimination. Order Denying Pl.'s Mot. to Am. Compl., *Dye v. BellSouth Telecomm., Inc.*, Civil Case No. 03-2229-DV (W.D. Tenn., Sept. 8, 2004).  The court must ask the question put forth by the *Hensley* court, whether a level of success was achieved that makes the hours reasonably expended a satisfactory basis for making a fee award.  This court determines that, based on Dye's success on her Title VII claims and her limited success on the motion to amend her complaint, she is entitled to a fee award for the time spent on preparing that motion to amend.

Therefore, it is submitted that Dye be awarded a total of $34,488 in attorney fees and $876.99 in expenses.

E.   Interest

Finally, Dye seeks pre-judgment interest on her back pay award.  (Pl.'s Br. 11—12.)   Post-judgment interest on a money

19

judgment in a civil case in a district court is mandated by statute. 28 U.S.C. § 1961(a). The rate of interest currently used in calculating the amount of post-judgment interest is the weekly average one-year constant maturity Treasury yield as published by the Federal Reserve.[10] *Id.*

Pre-judgment interest is neither provided for nor precluded by the federal statute governing post-judgment interest. *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir. 1982). An award of pre-judgment interest is discretionary with the court, *EEOC v. Wooster Brush Co. Employees' Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984), but it is "usually appropriate to make a discrimination plaintiff whole." *Thurman*, 90 F.3d at 1170. Pre-judgment interest should be excluded, however, for delays that are attributable to the plaintiff. *Thurman*, 90 F.3d at 1170.

Unless exceptional circumstances are present, this court concludes that the pre-judgment interest rate should be fixed at the same rate established for post-judgment interest. This court finds that there are no exceptional circumstances present here that require a rate different from the post-judgment interest rate. Dye

---

[10]     Prior to December 21, 2000, the rate of interest allowed under 28 U.S.C. § 1961 was based on the coupon issue yield equivalent of the average accepted auction price for the last auction price of the 52-week treasury bills immediately preceding the date judgment is entered.

has not demonstrated to the court that she had to borrow money at any particular rate to support herself during the pendency of this lawsuit, nor did she demonstrate that she was forced to forego any investment opportunity or would have made any investments whatsoever.  She also did not present any evidence that BellSouth caused any delay in getting the case to trial.

Neither party has submitted evidence regarding Dye's pay period for receiving pay checks to enable the court to apply prejudgment interest to each installment of wages as they became due.  In the absence of such evidence and for simplicity's sake, this court calculates the pre-judgment interest on the lump sum back pay award as of December 3, 1999, the date Dye was returned to BellSouth's payroll.  It is submitted that Dye is therefore entitled to pre-judgment interest on the back pay amount of $19,500 at a rate of 5.47%, beginning December 3, 1999, through October 31, 2006, for a total amount of $7,369.34, and at a per diem rate thereafter of $2.92 until judgment is entered in this matter.  This court recommends that no pre-judgment interest be awarded on the unliquidated award of compensatory damages.

CONCLUSION

It is submitted that Dye be awarded damages in the amount of $63,234.33 calculated as follows:

Gross Back Pay (as reduced)                $19,500.00

21

| | |
|---|---:|
| Prejudgment Interest on Back Pay<br>(from 12/3/99 through 10/31/06) | 7,369.34 |
| Compensatory Damages | 1,000.00 |
| Attorney Fees (as reduced) | 34,488.00 |
| Expenses | 876.99 |

In addition, it is recommended that the pre-judgment interest on the back pay continue to accrue at a per diem rate of $2.92 until judgment is entered, beginning on November 1, 2006.  It is also recommended that Dye be awarded post-judgment interest at the statutory rate commencing at the time of entry of judgment until the judgment is paid in full.

IT IS SO ORDERED this 25th day of October, 2006.


s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE